Case No. 13-1008 et al., TNA Merchant Projects, Inc. Petitioner v. Federal Energy Reservatory Commission Mr. Mitchell for Petitioner, Ms. Chu for Respondent FERC, and Mr. Olive for Respondent EPA Mr. Mitchell for Petitioner, Ms. Chu for Respondent EPA Mr. Mitchell for Petitioner, Ms. Chu for Respondent EPA Mr. Mitchell for Petitioner, Ms. Chu for Respondent EPA Mr. Mitchell for Petitioner, Ms. Chu for Respondent EPA Mr. Mitchell for Petitioner, Ms. Chu for Respondent EPA Thank you. May it please the Court, I'm Jim Mitchell. I'm here as the attorney for TNA Merchant Projects, in this case. As you all know, TNA Merchant Projects has a claim for refunds from the Federal Energy Regulatory Commission. A little bit of background is appropriate. The generator involved here was Chehalis Generating Company. Chehalis Generating Company was providing reactive power service without charge to the Bonneville Power Administration for a number of years. Subsequently, pursuant to agreement with the Bonneville Power Administration, TNA Merchant Projects filed a rate schedule at the FDRC, pursuant to Article 205 of the Federal Power Act. The rate schedule was filed, the letter of transmittal noted that the rate schedule was being filed as an initial rate schedule, which meant it was not subject to the FDRC's authority to suspend the rate schedule and order refunds. The FDRC ignored that limitation and ruled that... They didn't ignore it. They discussed it, didn't they? Well, they ignored the fact that it was filed as an initial rate schedule. They ruled against it. Yes, they ruled against it. They didn't ignore it. They were aware of it. You're right. I'm sorry. They ruled that it was a rate schedule. We ruled against it. You're going to tell us right before we ignored you? I'm sorry. Anyway, the FDRC asserted authority to order refunds, and subsequently they ordered my client to refund $2 million to the Bonneville Power Administration. TNA Merchant Projects appealed that earlier decision to this Court. This Court ruled that the FDRC had overlooked... Well, get to the point. You're wasting time. You're seeking recoupment. Yes, we're seeking recoupment, and I think we're justified in getting recoupment, because the FDRC's decision, finding that it had authority to require the refunds in the first place, was a clear error. Why was that clear error? Section 205C says public utilities must file schedules showing all rates and charges for any transmission or sale. So a transmission, it's clear that there was a pre-existing transmission involved here. There was service, and that Bonneville was an existing customer for the reactive power, no? Bonneville was getting reactive power, but there was no rate. But there was transmission. There was service. But the language of the statute is, you shall file schedules of rates and terms, conditions affecting rates, but there was no rate. Well, the rate was zero. There was no compensation. Right, the rate was zero. So there's transmission, there's a customer relationship, and they were providing it for free, but there was clearly a pre-existing provision. There was a document under which the service was being provided. Provided, exactly. Isn't your best claim here is that through all this massive stuff, FERC has said persons in your client's position had no reason to have notice that this is what we would do, and therefore, that is why we are saying there should be recoupment. Certainly, yeah, we did not have notice. Well, they said that. I mean, I read this all over again. I mean, that's administrative law. Now, is that where you're grounding it? Because the Supreme Court has said if you don't have notice, there's a real problem. And what FERC eventually does in the last couple of opinions that they write is to say, we're making this a rule prospective only because there was really no notices that this is where we would go previously. The case law has been inconsistent. Well, I think we have two arguments. I think FERC is right. You want to argue that they couldn't reach the result that they reached no matter what, no matter when. You want to say their interpretation is simply wrong. Yes. The other argument, I think pretty clearly based on what I'm looking at, is whether they're right or wrong, they made it absolutely clear that their order is only prospective because in their view, you had no reason to believe that this is what the result would be in this case. That's true. That's your best argument, it seems to me. Well, it is, and the reason why I think the issue of whether the first interpretation was correct or not, it depends on how the second issue, the refund issue, turns out. Which refund issue? We've asked the FERC for recoupment. That's different. And that's the point, is it just fouled us up terribly. No, I'm being serious. We've got to get this straight. Recoupment is not the same in terms of what, in this context, as a refund. And the agency, and I will ask the agency, the agency's got it completely wrong in suggesting that Bonneville is seeking a refund under 205. They're not seeking a refund. I agree with you. Unfortunately, as you said, the agency did not agree with that line of thinking. And so I don't know where this is going to end up. My hope is that the agency— I'm just trying to make sure I understand your argument. Are you reading it as I am, that the agency has said there was no fair notice to you, and therefore we're making this prospective only. The prior case law gave you no notice that this might be. It's quite apart from your argument that they couldn't reach this. I understand that. I may or may not agree with that. But the other argument, unless I'm missing something, is you had no notice of this, and this has nothing to do with a refund under 205. This is a recruitment claim. That's true. And if the FERC had ordered the Bonneville Power Administration to give us back the money that we had been forced to give them in the first place, this case would have ended. The trouble was they didn't order the Bonneville Power Administration to do that. So now the question is, what more do we need to do to get our money back? If this case is remanded to the FERC, I would hope that they would finally order BPA to give us the money back. If they don't, there's at least potentially— Well, they're taking a position that it's a non-jurisdictional entity, and so even though this is the right result, their hands are tied. I mean, I got a lot of questions for them on that one. But what's your argument? That's essentially what they're saying. When you look at the case carefully, it's a recruitment case. It has nothing to do with refund under 205. You've already given the refund under 205. That has nothing to do with Bonneville. So the question is whether or not, as Judge Griffith in one of these cases says, there is a notion of recruitment if it's justified. If the agency has explained why a recruitment is due, it can happen. Their response seems to be, well, but they're a non-jurisdictional entity. And so even though recruitment is justified, our hands are tied. And I agree with— Well, what's your answer to that? Your analysis. If this is a case under Section 205 of the Federal Power Act, the regulated entity is Chehalis Generating Company, which is a regulated public utility under the Federal Power Act. Chehalis was ordered by the FDRC— Yeah, no, no, and I got all that. Who has that? I'm confident their response to that line is, okay, but they're a non-jurisdictional entity. So even though we agree you're entitled to a recruitment, we don't know what to do. My answer is you're not regulating BPA. You're regulating Chehalis. You have jurisdiction over the rates being charged by Chehalis. This case involves rates charged by Chehalis, not by Bonneville Power Administration. Which is why it's different from Tank. Yes. Right. Yes, the court of appeals in the BPA case, the Bonneville Power Administration case, cited in the various briefs. So your answer is this isn't a regulation. It's like money that was dropped on the floor, and Bonneville picked it up, and they're claiming, well, we got it, so we're non-jurisdictional, so no one can touch us. Is that your argument? Yes. Okay. And they're saying you have no authority to order us to give the money back. And my position is, yes, Section 309 of the Federal Power Act gives the FERC broad remedial authority to modify, alter, amend its orders to correct any error. And it was error for the FERC to order Bonneville to. . . In light of a lack of notice. In part, in light of a lack of notice. I know you want to argue that. . . I'll stay away. You've got to make both arguments, seems to me, because you're on tougher ground if you say because they were wrong as a matter of law as opposed to they conceded there was no notice. Yes. No, I agree with that. My only concern is if I can't get the refunds out of the FERC and I need to go to another forum, for example, the Court of Federal Claims, I would rather have a definitive ruling that FERC was in error as a matter of law. I mean, there's layers of FERC's punitive error. If FERC didn't give notice that it would have treated us under 205, I thought part of your position was this doesn't create kind of a moral hazard because they can always get this kind of remedy under 206. And given that you should have anticipated when the Chehalis rate was not just unreasonable that there might have been review under 206, then why is that really a retroactivity problem or a knock-notice problem for Chehalis? Because the standard for rate review under 205 is different from 206. Under 205, the filing utility, Chehalis had the burden of proof. Under 206, either the FERC acting on its own or Bonneville as a competing party would have had the burden of proof. And we don't know how that would have turned out. And is there a time limit on bringing the 206? There's no time limit on bringing it. If the case is brought under 206, the refund period is 15 months. If it's brought under 205, the refund period can run as long as it takes for the FERC to issue a decision. All right. Thank you. I have nothing more. We'll hear from Ms. Chitwood. Good morning. May it please the Court. Susanna Chu for the Federal Energy Regulatory Commission. I think it may be helpful to consider that there are two distinct issues presented on appeal. And perhaps three if the Court considers the new issue that is raised only by Intervenor Bonneville. The first is what do we call Chehalis's May 2005 filing? Do we call it an initial rate or do we call it a change rate? And that issue, Judge Edwards, I think you rightfully point out, I'm sorry you didn't use these words, but our position is that that issue is moot because the Commission agrees with Chehalis that it would be appropriate for Chehalis to recoup the money from Bonneville. That Chehalis may have preferred the Commission to call its filing an initial rate. So we no longer have to decide that issue in order to decide the case. Great. Okay. So the second issue is the jurisdictional issue. Is recoupment permitted under the law as it stands today? That is a live issue, and the Commission reasonably read Excel on the one hand and Section 309, and on the other hand Section 201F and the cases Tank, Bonneville, and Southwestern Power Administration. That is not this case. Your Honor, I understand that Tank was an issue of refunds, and recoupment is different. Right. But still the Commission is here with Excel and with Section 309, and the Commission's understanding is that Section 309 doesn't confer independent authority. It doesn't override the exemption of Section 201F. There are so many silly hypotheticals I could give you where money passed pursuant to so-called refund initially, as it did in this case. Yes. And everyone in the world would agree, oh, my God, how did that happen? That's absurd. And your argument, the logical extension of your argument is we could never recoup that money. If it's a non—that makes no sense. There's nothing to me in the statute, the regulations, or the legislative history to indicate that that's what Congress meant to say. These non-jurisdictional entities are players under this statute. Bonneville was in this case from day one fighting to get money. They are players under this statute. So it's absurd to say they can play to grab the money, and then at the end it turns out, well, no, they really shouldn't have been able to pick the money up off the floor and say, well, wait, they're non-jurisdictional, so we can't do anything. That makes no sense. So, Your Honor, the commission, you know, just under the statute and under the cases, you know, as they stand out. Well, you agree that you think the commission—you agree the commission says they should get recoupment, right? Yes, that's correct. And you agree it was a lack of notice, right? The commission—I read that over and over again. It's a strong statement, as I've seen recently from an agency saying, yeah, they didn't have adequate notice. Right, right. I think the commission agreed that perhaps Chihalas did not have notice of the commission's policy. We made it effective going forward. I don't really understand why the commission didn't take the position that, well, they had noticed that they would be subject to review under 206, if not 205, and if that's functionally similar, why didn't FERC go after them under 206? Is it too late? Are they trying to establish a precedent? I mean, do you not make alternative arguments like that? Because I guess the concern is, yes, they didn't have notice. On the other hand, they were charging a rate that was unjust and unreasonable in the order of 250 percent. So how should it come out at the end of the day? And given 206 and given the notice that they should have had some review for the reasonableness of that rate— Right. Well, I'm not sure, Your Honor, going back, what the commission could have or would have done under Section 206. But a case arose under Section 205, and as the petitioner points out correctly, the burden is somewhat different under Section 206. So as the case is presented now, it is a Section 205 case. So the commission was trying to be mindful and trying not to overreach its jurisdiction because it was the commission's— As I read the commission's statement, they were essentially saying, well, if you all, that is, this panel, can find a way to do the recoupment, help yourselves. Right? That would be within the Court's prerogative, yes. And you were thinking of the Court of Claims? What were you thinking of? Well, it's true that Chalice could potentially have a claim against Bonneville, and that could be brought in the Court of Claims. I will note that. But they may have one right now. Yeah. But they could. Because we have said in the case law—I realize it wasn't a non-jurisdictional entity, but the case law here says recoupment is a viable motion. This is not a refund. We're not directly regulating. You would not be directly regulating Bonneville. So I don't understand how that argument with respect to jurisdiction comes into play. There's no regulation. These people are always in play here. Right. Well, that is why— This is not Article III jurisdiction we're talking about. We're just talking about— Yes. The City of Arlington has a lot of discussion about how jurisdiction is used a lot. We're talking about the authority of the commission, and where the commission has the entity in front of it for authority purposes of allocating money, why does that authority cease to exist when the allocation is going in the opposite direction? Right. Well, Your Honor, that— I'm not sure I understand any argument of the government that explains why that is. The commission was just trying to be mindful of the scope of its statutory authority and didn't want to overreach in light of these cases. Well, I appreciate it. Thank you, Your Honor. And we can hear from Mr. Olive. Oh, God. May it please the Court. My name is Courtney Olive, representing Intervenor Vulnerable Power Administration. Two things to clear up right off the bat. First of all, the notion that this is merely— As we have explained in our intervenor brief, FERC's findings in this case have not changed. Bonneville was charged an unjust and unreasonable rate. Chehalis never appealed that finding, never sought to stay of it, never took it up with this Court. That was issued by the full commission in 2008, and it is still on the books. Now, the Supreme Court said last year in the FERC v. Electric Power Supply Association, when you have a finding like that, that a rate is unjust and unreasonable, the commission must take remedial action. It is not a discretionary authority. It is an affirmative duty that the commission must carry out. So that finding is still on the books. You also have the same legal conclusion from the commission all throughout this case, that this is a changed rate. Even in the 2013 order, when they add this surplus language about, well, we don't want to—we want to absolve Chehalis of liability because our decisions may have not been clear. Even when they add that, they still say in that order, we continue to affirm. Paragraph 1, we continue to affirm this is a changed rate. Paragraph 11, we reaffirm this is a changed rate because they should have filed. So the facts have not changed. They still should have filed this rate because it was a jurisdictional service. As Your Honor pointed out, under 888, it was known to be a jurisdictional service for years before Chehalis even interconnected with Bonneville's system. And that alone, all jurisdictional services must be on file. Now, whether or not it was a quote-unquote rate schedule doesn't matter. The statute says that together with— Well, you have a real problem there because the agency has done something it rarely does, is to say they had no reason to know this because of our conflicting perception. You can argue until your breath goes away. That is there. They have said we reviewed it. That is a mistake. And they said we have now weighed the equities. It has to be explained. And we think—and they did it three times. We re-weighed the equities, and we think the proper result is recoupment. Well, so that gets to my second point, whether or not recoupment is proper and whether they actually weighed any equities here. We do not find anywhere in the three decisions of FERC, they merely assert that it would be appropriate. However, this Court's decision on recoupment is the Black Oak case from 2013, and that places an extremely high bar to recoupment. It says that because we want to hold—we want to sanctify these refunds that the Commission has given, we can't just willy-nilly let recoupment occur. We need to show whether policy reasons outweigh all these negative effects of recoupment. Here, they do not. What is being suggested is that Chehalis get back the entire amount of this. And as Her Honor has pointed out, even if this had been treated as a Section 206 case, that certainly wouldn't have happened. Now, I've heard some arguments here about, well, the burden is different in that case, and the burden of proof would have shifted. You're exactly right. It is. However, what was going on in this case is there was a settlement agreement between Bonneville and three parties, three generators in the Northwest. Chehalis was one of them. Chehalis is the only one that didn't follow the formula that that settlement agreement specified. So it's an objective standard that FERC looked at. Did they follow the formula set forth in the settlement agreement or not? So even if FERC had had the burden of proof under that objective standard, I mean, it seems highly likely that they either met the formula or they didn't. You know, the 2008 FERC order in paragraph 11 has seven different things they included as charges that they shouldn't have. So they didn't meet the formula. So even if the burden of proof were different, we submit that the results would be no different under the 206, except you'd have a slightly shorter time period that refunds would apply to. So not zero, as in this case. What about the fact that FERC didn't seek them under 206? Could they do that now? Defend a more limited recoupment given an offset under 206? Your Honor, that's a very complicated question. I would have to let FERC speak to that, whether they would exercise their discretion to do that now or not. You know, at the end of the day, FERC is not correcting any legal error here. It's only making a policy clarification. Its legal conclusion remains the same throughout this case for all the same reasons, and the unjust and unreasonable finding remains on the books. Can you just parse this statute, 205, for us? Sure. And, you know, the chalice briefs say, you know, rate, rate, rate, rate. There was no rate. And your position is that if it's the same service and if it's the same customer and there's a transmission agreement, that's enough. How does that conform with the language of 205? Sure. I'd be happy to walk you through that. So the last time the Court heard this case in December of 2009, this exchange occurred in an oral argument, and I found it quite helpful to listen to that. What was said there, and we would agree with FERC's analysis on this, is, okay, you start with 205E, which says, FERC is allowed to suspend and refund when any such new schedule is filed, right? So that's the schedule we're dealing with. And when it says any such, that reference in 205E backs up to 205D, which says no change shall be made in any such rate, charge, or contract. And, by the way, the interconnection agreement is the contract that was the initial document. So no such rate may be made without it being on file with the Commission. And then when it says no change, what are we changing from? Well, we're changing from whatever was on file under 205C. So Chehalis had a duty, Chehalis shall file schedules showing all rates and charges, and at the end of the paragraph, together with all contracts, which in any manner affect or relate to such charges. So Chehalis knew full well. I mean, if you look at the JA, their very first document. It's not the point if we're analyzing this case as a failure of notice and a recoupment question. Right. Well, what you're doing is defending what they say they're going to do prospectively. Your Honor, if you're analyzing it purely as a recoupment question, then you need to look at Black Oak and whether the policy reasons outweigh the negative effects. And here we would say that because of the sanctity of the refund amount, because of the fact that this would not put the parties, leaving Bonneville with zero after it was charged, this unjust and unreasonable rate, does not put the parties back in the position that they otherwise would have been. So what you're saying is if we don't address the first thing that you were responding to, and we do have to decide this case under recoupment, you'd like the commission to have an opportunity to weigh whether it should be something other than zero that you're left with. Absolutely, at a bare minimum. Yes. Yes, under this court's case law, they would have to do some sort of weighing. Well, they've said they've done the weighing. I mean, I'm just trying to understand your argument. Your argument is they really haven't weighed? Correct. They're simply saying, well, Chehalis has pointed out a few of our precedents, even though in two of our prior orders we easily distinguished those precedents. But they've pointed out a few of our precedents that suggest that they didn't have notice. So just due to that fact, we're going to give them all the money back. I'm assuming that what they've said about a lack of notice is done. That's my assumption. They've said it, and I'm not confused on it. This is just me speaking. I'm not confused on that. You seem to be saying, well, but then you have to weigh the equities under Black Oak or whatever. You're saying they haven't really weighed anything. Is that your argument? Correct, Your Honor. They haven't weighed whether the notion of giving this whole refund amount and interfering with the sanctity of when the commission issues a refund to begin with and makes facts. This isn't a refund. Well, but in recoupment, Black Oak says. It's really very different. Well, Black Oak says that if you're going to claw back a refund, that's the refund I'm speaking to now. If you're going to recoup that and claw that back, you've got to weigh the policy reasons. One last thing that I must say here. Is there anything other than Black Oak that you would look to on that? Well, I would certainly also look to the jurisdictional prohibitions on FERC's authority. Now, the notion that this is not a quote-unquote refund, Judge Edwards, I respect that, and I understand where you're coming from, but you are giving. It's giving time. No, respectfully, I very strongly disagree. No, I know you do, but you're wrong because it's the flip of tank. Okay, well, let me explain. So in tank, this court said, and FERC had argued, look, all we're doing here is we're correcting a jurisdictional utility's rates, so we need to reach out to a non-jurisdictional. The court said you cannot do that in tank. The Ninth Circuit has also said that in Bonneville. But the non-jurisdictional entity was in a different posture there than they are here. Only because this case is sort of backwards. We're the consumer. We were not the seller. It's critically important in thinking about regulation. We're not really regulating you. You have been in this process all along. Your client's been in this process all along. Now, if FERC is asking us to give a refund or to do recoupment, that is regulating us. Well, you know what? Then you were regulated when you got the refund in the first place. Your Honor. It makes no sense. You were there, and you said we should get that refund. I understand. Okay, so is that regulation? Bonneville isn't allowed. And all the power marketing administrations and governmental utilities and municipalities frequently avail themselves of these provisions. Of course they do. And so there are effects. That's not really regulation of the sort that we're talking about in tank. Well, if this court looks at tank and looks at the Ninth Circuit's Bonneville decision as well as the Redding decision, which we haven't gone into, but it's in a footnote, it will see that Bonneville is the squarest case on this issue. It says the identity of the seller's controls, not the subject matter. It doesn't matter that the subject matter. Sometimes it's loose language that you can read as broadly as you want, but it makes no sense to say that if money has gone to a non-jurisdictional entity and everyone in the room agrees there's no conceivable way it could have gotten there, that the agency can't order recoupment. That makes no sense. Your Honor, that is how the statute works under Congress's writing. If you look to Bonneville, it's not loose. I can't find anything that says that. If you look to the Bonneville decision, it is not loose language. You do not look to the subject matter that is going on. In that case, it was FERC's powers over markets and ensuring just and reasonable rates. And that's the same thing here. They're trying to ensure that Chehalis has a just and reasonable rate. They're trying to ensure that money that they think shouldn't have moved under their authority in the first place is put back where it belongs. Well, then the only tool they have to do that is 309, and 309 does not give them the power, the general power, to trump the specific statutory prohibition in 201F that no refunds. If we rule against you on this argument, does your client have a position on whether relief would lie in the court of claims? I'm not telling you you have to concede the case. Would it have jurisdiction to approve? Do we have a position on whether relief would lie in the court of federal claims? Yes. Well, we would have to wait until a complaint is filed and evaluate. I'm sorry I can't tell you. Are there other entities in parallel situations? I mean, how broad is the implications of this? Extremely broad, Your Honor. So the governmental exceptions in 201F against refunds, and I understand Judge Edwards doesn't say that these are not refunds, but any time that FERC exerts its coercive power over another entity of the United States, which Bonvol is, 201F says that's a refund. You're forcing us to pay money. I'm actually asking a narrower question with respect to this treatment of initial versus changed rate, and are there other entities that did or didn't get review and some amount of withholding? Right. Okay, so there are other generators, like in Chehalis's position, that may not have had notice. It's unclear on this record how many generators there may have been. I mean, you may have seen the references that FERC held a technical conference on this to try to figure out what to do. So there are other generators that may have been in that position. But on these facts, you know, if you read the Chehalis 4 order, the 2012 one, FERC does a very nice job there of explaining why on these facts there was actual notice on Chehalis's part. I mean, the first document in the JA, their filing letter, says, you know, the last two pages of it they make arguments about why FERC ought to treat it as initial, but they recognize even if the commission treats this as changed, you should do this. So they knew all along that it was the commission's statutory determination to make. So I see I'm well over my time, and I appreciate the court's indulgence. I just want to close with the notion that under some sort of general recoupment power, as conjured up by 309, that FERC could get around the specific statutory bar on ordering entities of the United States to pay money. They say pay refunds. That's not what the order would be. Well, but, Your Honor, when they are ordering an entity such as the United States or even a municipality, which 201F also exempts, that's a refund. To give money to a community that didn't belong there? That's FERC's only power to make us pay money is a quote-unquote refund power, Your Honor. As opposed to the court's order? Does the court have that authority? So the theory is if this case is properly before us and under our broad remedial authority, do we have that authority? Oh, does this court have that authority? Yeah, I don't see how we don't. 4106, we have the authority. The agency has said, yeah, this is a situation in which money is moved and it shouldn't have moved. We made a mistake. We didn't give notice. We're acknowledging it. We're writing it as clearly as it can be written. We're not sure we can do it. You sure can. I would have to brief that issue, Your Honor. I don't think it's been suggested that this court should order the refund. I mean, FERC has suggested up and down in footnotes that some court, and it's been sort of averse, that that would be the court's federal claim. I saw some court was this court. It's properly before us. Again, Your Honor, I would have to ask that we do a further briefing on that issue. I urge this court to look at the Bonneville case, the notion of whether it's the identity of the party. In that case, it was a seller, not a consumer. So, granted, things are flip-flopped here, but it does not matter. The subject matter does not give FERC power. No, I think what you're looking at, Preston, and it does matter what the facts are. Well, absolutely, Your Honor. But the outcome, FERC's subject matter power, whether it be over ensuring that rates are just and reasonable, as it was trying to do in Bonneville, or trying to do some form of recoupment, as it says ought to happen here, in its view, in its policy view, the Bonneville decision from the Ninth Circuit says it doesn't matter. 201F still bars them. Okay. Thank you very much for all the court's time. All right. Thank you. Does Mr. Mitchell have time remaining? If you'd like to. You don't have to, but if you'd like to take up all the time. I thank the court for its indulgence in this case in response to some of the comments made. Is this on? Yeah. We can hear you fine. You know, as was just discussed, the Bonneville case made very clear that first jurisdiction governs the seller, not the buyer. In this case, Chehalis was the seller. Chehalis is the regulated entity. If it doesn't govern the buyer, the buyer here is Bonneville. If you're right about that statement, how can you win it? Because FERC is regulating the rates charged by Chehalis. Right now they're ordering every coup month. They're correcting their order to put the parties in the situation they would have been if the FERC had made the proper decision. What you would say is the subject matter creates the authority of FERC. FERC has the authority to correct its orders, as in the Black Oak case. Well, I mean, that's just to respond to the statutory provision that the other side said doesn't apply. It says that the agency can correct, amend its orders. And if a beneficiary of an order is there and they have the authority to correct an order, I mean, that's the argument. Then the beneficiary who benefited initially but took the refund is still remaining subject to, well, wait, we made a mistake. You've got to give it back. It's an interesting question. And in response to the concerns about the FERC's evaluating whether and to what extent recoupment is proper, if they do have the authority, the FERC, as Your Honor, Judge Edwards observed, has already addressed that issue. It looked at the Black Oak case and the need to balance the equities and said, in this case, the equities were in favor. It doesn't get us to the last point. Does the analysis somehow change because it's a non-jurisdictional entity, unfortunately? And the answer to that is yes. And, I mean, your answer is, or 309 or whatever it is, has to be taken for what it says. They were willing to take the money on our authority. We gave them an ordered refund on our authority, and they took it on our authority and didn't quibble that they were non-regulated. Well, we can tell them you made a mistake and we're ordering that it be returned because we made a mistake. That's your argument. That's right. Plus, I would note, again, the exemption in Section 201 of regulation of government entities applies only to Part 2 of the Federal Power Act. Section 309 is Part 3 of the Federal Power Act, so there is no exemption such as Bongo's claim. Thank you very much. Case is submitted.
judges: Pillard, Edwards, Sentelle